UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

No. 11 Cr. 118 (ARR)

UNITED STATES OF AMERICA

       v

ONWUCHEKWA CHIDIEBERE,

         Defendant.

------------------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## <u>MOTION  TO TERMINATE SUPERVISED RELEASE</u>

Lindsay A. Lewis, Esq.
Joshua L. Dratel,  P.C.
29 Broadway, Suite 1412
New York, New York, 10007
(212) 732-0707
llewis@joshuadratel.com

*Attorneys for the Defendant*
*Onwuchekwa Chidiebere*

TABLE OF CONTENTS

Table of Contents.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  iii

Introduction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

STATEMENT OF FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

A.   *Mr. Chidiebere's Arrest, Indictment and Sentencing.*  . . . . . . . . . . . . . . . . . . . . . . . .  2

B.   *Mr. Chidiebere's Detention in Immigration and Customs Enforcement Custody*
     *And Application for Asylum Status As A Result of Persecution in Nigeria.*. . . . . . . . . . . .  2

C.   *Mr. Chidiebere's Struggles to Obtain Skilled Employment,*
     *Further Education, and Permanent Resident Status in the U.S.*. . . . . . . . . . . . . . . . . .  3

D.   *Mr. Chidiebere's Record on Supervised Release.*. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

ARGUMENT

MR. CHIDIEBERE'S FULL ASYLUM STATUS IS A
CHANGED CIRCUMSTANCE WHICH RENDERS HIS
TERM OF SUPERVISED RELEASE TOO HARSH AND
INAPPROPRIATELY TAILORED TO THE GOALS OF
PUNISHMENT, AND THEREFORE WARRANTS EARLY
TERMINATION IN THE INTEREST OF JUSTICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

A.   *The Law Governing Early Termination of Supervised Release.*. . . . . . . . . . . . . . . . . . .  7

B.   *Mr. Chidiebere's Full Asylum Status Is a Changed Circumstance Which*
     *Renders the Term of Supervised Release Too Harsh In Relation to the*
     *General Goals of Punishment the Sentence Was Intended to Serve* . . . . . . . . . . . . . . . . .  8

     1.   *Mr. Chidiebere's Continuation on Supervised Release Leaves*
          *Him At Risk of Losing His Asylum Status, Given the Current*
          *Situation in His Home Country of Nigeria And The Unlikelihood*
          *Of Achieving Legal Permanent Resident Status*
          *While On Supervised Release.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

i

2.      *Mr. Chidiebere Is Further Hampered In His Educational and
        Employment Opportunities by The Unlikelihood That an
        Application for Legal Permanent Residence While On
        Supervised Release Will be Successful*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

C.      *In Light of Mr. Chidiebere's Full Asylum Status, the Goals of Punishment Articulated In
        18 USC §3553(a) Are No Longer Served By the Term of Supervised Release.* . . . . . . . . 13

        1.      *"The Nature and Circumstances of the Offense and the
                History and Characteristics" of Mr. Chidiebere Favor
                Termination of Supervised Release.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

        2.      *Mr. Chidiebere's Asylum Status Renders the Term of
                Supervised Release Unnecessary to "Afford Adequate Deterrence,
                to Protect the Public From Further Crimes of the Defendant,
                and to provide the Defendant with Programs or Treatment"*. . . . . . . . . . . . . . . . 16

        3.      *The Remaining Factors Under §3553(a)*. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

TABLE OF AUTHORITIES

CASES

*Ehikhuemhen v. Attorney General*, ____ Fed.Appx. ____,
  2013 WL 4492764 (3d Cir. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Mendoza v. U.S. Attorney General*, 327 F.3d 1283 (11th Cir. 2003). . . . . . . . . . . . . . . . . . . . . 10

*United States v. Arboleda*, ____ F.Supp.2d ____,
  2009 WL 1181049 (E.D.N.Y., May 1, 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*United States v. Buckler*, ____ F.Supp.2d ____,
  2011 WL 3439526 (E.D.N.Y. June 15, 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*United States v. Harris*, 689 F.Supp.2d 692 (S.D.N.Y. 2010). . . . . . . . . . . . . . . . . . . . . . . . . 7, 13

*United States v. Johnson*, 529 U.S. 53 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Lussier*, 104 F.3d 32 (2d Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Perez*, ____ F.Supp.2d ____,
  2012 WL 2366247 (E.D.N.Y., June 19, 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Sheckley*, 129 F.3d 114 (2d Cir. 1997). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

STATUTES

8 U.S.C. §1101(a)(42). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

8 U.S.C. §1159(b)(2). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

18 U.S.C. §1546(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

18 U.S.C. §3553(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8, 13, 16, 17, 18

18 U.S.C. §3553(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 14, 15

18 U.S.C. §3553(a)(2)(B). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 14, 16

18 U.S.C. §3553(a)(2)(C). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 14, 16

18 U.S.C. §3553(a)(2)(D). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 14, 16

iii

18 U.S.C. §3553(a)(4). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 14, 17

18 U.S.C. §3553(a)(5). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 14, 17

18 U.S.C. §3553(a)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 14, 17

18 U.S.C. §3553(a)(7). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 14, 17

18 U.S.C. §3583(e). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

18 U.S.C. §3583(e)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6, 7, 18

8 C.F.R. §208.13(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

8 C.F.R. §208.24(b)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12

INA §241(b)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

## OTHER AUTHORITIES

Farouk Chothia, "Who are Nigeria's Boko Haram Islamists?," *BBC News*, January 11, 2012,
    available at http://www.bbc.co.uk/news/world-africa-13809501. . . . . . . . . . . . . . . . . . 9

Haruna Umar, "Nigeria: 50 Islamic Insurgents Killed in Army Raid," *ABC News*,
    September 6, 2013, available at http://abcnews.go.com/International/wireStory/
    15-killed-suspected-sect-members-nigeria-20171697. . . . . . . . . . . . . . . . . . . . . . . . . . 11

Heather Murdock, "Boko Haram Second-in-Command Killed in Nigeria," *Voice of America
    News*, August 15, 2013, available at http://www.voanews.com/content/boko-haram-
    second-in-command-killed-in-nigeria/1730457.html. . . . . . . . . . . . . . . . . . . . . . . . . . 10

Meg Handley, "The Violence in Nigeria: What's Behind the Conflict?," *Time*, March 10, 2010,
    available at http://www.time.com/time/world/article/0,8599,1971010,00.html. . . . . . . . 11

"Nigeria's Boko Haram is no threat, says Abba Moro," *BBC News*, August 13, 2013,
    available at http://www.bbc.co.uk/news/world-africa-23689074. . . . . . . . . . . . . . . . . . 10

"Nigeria school attack claims 42 lives," July 7, 2013, available at http://www.theaustralian.com.
    au/news/world/nigeria-school-attack-claims-42-lives/story-e6frg6so-1226675417375. . 10

"Nigeria profile," last updated on July 9, 2013, *BBC News*, available at http://www.bbc.co.uk/
    news/world-africa-13951696. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

iv

**Introduction**

This Memorandum of Law is submitted in support of Onwuchekwa Chidiebere's Motion to Terminate Supervised Release, pursuant to 18 U.S.C. §3583(e)(1).

Both Southern District of Texas Probation Officer Pat Brewster – who supervised Mr. Chidiebere from December 2012 (when he was first ordered to report to Probation in the Southern District of Texas) through August 2, 2013, when Mr. Chidiebere's case was downgraded to the "Low Threat Caseload" (the lowest level of supervision) – and Probation Officer Scott McMillan, who supervised Mr. Chidiebere as part of the "Low Threat Caseload," fully support Mr. Chidiebere's application for early termination of supervised release.[1]

In addition, Assistant United States Attorney Lisa Kramer, the Supervisor of the General Crimes Unit at the Eastern District of New York United States Attorney's Office, has advised counsel that the government takes no position on Mr. Chidiebere's application.

Accordingly, as detailed below, in consideration of the factors referenced in 18 U.S.C. §3583(e), including Mr. Chidiebere's exemplary behavior while on supervised release, his asylum status, and the obstacles which supervised release poses with regard to Mr. Chidiebere's access to employment and educational opportunities as well as to his ability to obtain legal permanent residence in the U.S., early termination is warranted by the nature and circumstances of Mr. Chidiebere's conduct, and is in the interest of justice.

---

[1]  Mr. Chidiebere, a resident of Texas since October, 2012, has never been supervised by the Eastern District of New York Department of Probation, and counsel has been informed by that Office that an E.D.N.Y. Probation Officer is not assigned to his case.

1

**Statement of Facts**

*A.*     *Mr. Chidiebere's Arrest, Indictment and Sentencing*

Mr. Chidiebere, a Nigerian citizen, was arrested February 5, 2011, at John F. Kennedy Airport, upon his entry into the United States.  *See* Indictment in *United States v. Chidiebere*, Docket No. 11 Cr. 118 (hereinafter "Indictment"), attached hereto as Exhibit 1.  He was subsequently indicted February 16, 2011, on charges of obtaining a visa using fraudulent information, in violation of 18 U.S.C. §1546(a).  *Id.*

During the course of the investigation, Mr. Chidiebere was fully cooperative with Department of State ("DOS") agents, and provided the names, telephone numbers, and bank account information of the individuals in Nigeria who assisted him in committing the fraud.  *See* February 24, 2011, Pre-Sentence Report (hereinafter "PSR"), at ¶ 4.

Mr. Chidiebere was held in the Metropolitan Detention Center in Brooklyn from the time of his arrest until March 1, 2011, when he pled guilty and was sentenced to time served and three years supervised release.  *See* Judgment in *United States v. Chidiebere*, Docket No. 11-cr-00118, attached hereto as Exhibit 2.

*B.*     *Mr. Chidiebere's Detention in Immigration and Customs Enforcement Custody
And Application for Asylum Status As A Result of Persecution in Nigeria*

Although Mr. Chidiebere's sentence of time-served should have resulted in only two weeks of incarceration, Mr. Chidibere was placed in Immigration and Customs Enforcement ("ICE") custody immediately after sentencing, and transferred to an ICE detention facility in Elizabeth, New Jersey, where he remained in custody for the next 5 ½ months.

2

Mr. Chidiebere was ultimately released from ICE custody August 15, 2011, on Withholding of Removal Status under the Immigration and Nationality Act, Section 241(b)(3), and the Torture Convention, after making an application for asylum on the grounds that his illegal entry into the United States was the direct result of persecution by the Boku Haram sect, an extremely violent and powerful terrorist group which targeted him because of his Christian missionary work in Nigeria. *See* August 15, 2011, Withholding of Deportation Record, attached hereto as Exhibit 3; *see also* May 9, 2012, Asylum Order (hereinafter "Asylum Order"), attached hereto as Exhibit 4. Upon his release from ICE custody, he moved to Georgia to reside with a friend and continued working on his petition for full asylum status based on the threat of persecution he would face in Nigeria.

Mr. Chidiebere was granted full asylum status May 9, 2012. *See* Asylum Order (Exhibit 4). As a result, he was assigned a Social Security number which, in pertinent part, permits him to work legally in the United States. He received his Social Security number in July 2012, at which point he immediately began looking for work. *See* Onwuchekwa Chidiebere Social Security Card, attached hereto as Exhibit 5.

**C.**     ***Mr. Chidiebere's Struggles to Obtain Skilled Employment,
         Further Education, and Permanent Resident Status in the U.S.***

Since July 2012, when Mr. Chidiebere obtained his Social Security number and was first legally eligible to seek employment in the U.S., he has been applying for jobs in engineering, the field of his training and expertise. However, despite holding a degree in Petroleum Engineering from the University of Port Harcourt, in Nigeria, Mr. Chidiebere has been unable to procure any employment apart from general unskilled labor. *See* PSR at ¶ 30; *see also* Letter from

Onwuchekwa Chidiebere (hereinafter "Chidiebere Letter"), attached hereto as Exhibit 6.

Accordingly, in August 2012, Mr. Chidiebere began working as a meat cutter for Pilgrims Pride Corporation in Athens, Georgia, for $300 dollars a week.  *See* Chidiebere Letter (Exhibit 6).

After a few months, he moved to Houston, Texas, to seek out opportunities in the oil and gas industry, given his education and work experience at an engineering firm in Nigeria.  *Id.* Despite submitting numerous applications for more challenging employment, Mr. Chidiebere was viewed as unqualified for anything other than packing boxes, assembling product parts, cleaning, and other similar menial tasks, due to his lack of a U.S. degree.

To date, Mr. Chidiebere – who has earned no more than $300 per week in any position he has obtained since he first began working in the U.S. – has been unable to afford even his basic necessities, and thus cannot even begin to meet his obligation to provide for his aging parents and eight siblings still living in Nigeria, or to consider starting his own family here in the United States.  *Id.*

Indeed, despite Mr. Chidiebere's education and experience, his earning potential and ability to provide for himself and his family, will not likely improve so long as he remains on supervised release.  As an asylee, Mr. Chidiebere was eligible to apply for legal permanent residence in May 2013, but his status on supervised release greatly decreases the likelihood that his application for legal permanent residence will be granted.  Without access to the educational and financial aid opportunities available to him as a legal permanent resident, Mr. Chidiebere is unable to afford an education from a U.S. institution, which is necessary to work in the engineering field, or even to elevate him to a level of employment beyond the unskilled labor he

4

is presently deemed to be qualified for. Thus, since his employment prospects will not improve
without the ability to apply for legal permanent residence, continued supervised release prevents
Mr. Chidiebere from contributing to and engaging in society at the level at which he is capable of
doing so.

**D.** *Mr. Chidiebere's Record on Supervised Release*

While on supervised release, Mr. Chidiebere has been a model citizen. He has been
steadily employed since he was legally able to obtain work in the United States, and has paid the
special assessment fine of one hundred dollars. *See* Chidiebere Letter (Exhibit 6). Mr.
Chidiebere has not had any further arrests nor has he engaged in any further illegal behavior since
his arrival in the U.S.

Indeed, since being made aware of the requirement to report to his local Probation office
in the Southern District of Texas, almost ten months ago, Mr. Chidiebere has been in full
compliance with the terms of his supervised release. He has never missed an appointment with
his former Probation Officer, Mr. Brewster, nor a single check-in with his current Probation
Officer, Mr. McMillan, since his placement last month on the Low Threat Caseload, which
merely requires Mr. Chidiebere to provide a monthly mailing to his Probation Officer to verify
income. *Id. See* August 2, 2013, Letter from Southern District of Texas Probation Officer Scott
McMillan (hereinafter "McMillan Letter"), attached hereto as Exhibit 7.

Thus, although Mr. Chidiebere was unaware of his obligation to report to Probation
between his release from ICE custody in August 2011 and December 2012, as a result of a
"breakdown in communication between ICE, the Probation Department and the offender," he
became immediately compliant upon being informed of the reporting requirement by Eastern

District of New York Probation Officer Kelly Devine. *See* December 10, 2012, Non-Compliance

Summary Court Order (hereinafter "Non-Compliance Summary and Order"), attached hereto as

Exhibit 8.

      Accordingly, both Mr. Brewster and Mr. McMillan have stated to counsel that they

strongly support and fully endorse Mr. Chidiebere's application for early termination of

supervised release.

**ARGUMENT**

**MR. CHIDIEBERE'S FULL ASYLUM STATUS IS A
CHANGED CIRCUMSTANCE WHICH RENDERS HIS
TERM OF SUPERVISED RELEASE TOO HARSH AND
INAPPROPRIATELY TAILORED TO THE GOALS OF
PUNISHMENT, AND THEREFORE WARRANTS EARLY
TERMINATION IN THE INTEREST OF JUSTICE**

      Mr. Chidiebere has been on supervised release for more than two years, and is therefore is

eligible to apply for early termination, which is granted when "changed circumstances" render

the term or conditions of supervised release "too harsh or inappropriately tailored to serve the

general punishment goals" enumerated in 18 USC §3553(a). *United States v. Lussier*, 104 F.3d

32, 36 (2d Cir. 1997); *see* 18 U.S.C. §3553(a); *see also* 18 U.S.C. §3583(e)(1).

      In Mr. Chidiebere's case early termination of supervised release is warranted pursuant to

18 U.S.C. §3583(e)(1), because the grant of full asylum status to Mr. Chidiebere, subsequent to

the imposition of supervised release, constitutes a changed circumstance so dramatic as to render

any further term of supervised release too harsh and/ or inappropriately tailored to the goals of

punishment, in light of the fact that Mr. Chidiebere stands little chance of being granted legal

permanent residence (which he is now eligible for as a result of his asylum status) so long as he

6

remains on supervised release, and thus suffers both vastly diminished employment prospects, as well as the continued  risk of deportation, neither of which he would likely face if supervised release was terminated, and this probable bar to permanent residence removed.  Accordingly, Mr. Chidiebere's application for the early termination of his supervised release should be granted in the interest of justice.

**A.**     ***The Law Governing Early Termination of Supervised Release***

Pursuant to 18 U.S.C. §3583(e)(1), the District Court, in its discretion, may terminate a term of supervised release after consideration of those factors listed in §3553(a)(1), (a)(2)(B) - (D), and (a)(4) - (7), if it concludes that doing so is "warranted by the conduct of the defendant...and the interest of justice."  18 U.S.C. §3583(e)(1); *see also United States v. Johnson*, 529 U.S. 53, 60 (2000).

Generally, compliance with conditions of supervision and other everyday examples of post-release good behavior are insufficiently changed circumstances to warrant early termination of supervised release.  *See United States v. Sheckley*, 129 F.3d 114, at *2 (2d Cir. 1997); *see also United States v. Buckler*, ____ F. Supp.2d ____, 2011 WL 3439526, at *1 (E.D.N.Y. June 15, 2011).

However,"exceptionally good behavior" or a serious obstacle to obtaining employment in one's field, are examples of "changed circumstances" which would seriously undermine the relationship between the term or conditions of supervised release and the general punishment goals served at the time sentence was imposed.  *Buckler*, 2011 WL 3239526, at *1; *see also United States v. Harris*, 689 F. Supp.2d 692, 694-95 (S.D.N.Y. 2010).

Accordingly, the analysis is focused on whether supervised release continues to vindicate

7

the "general punishment goals" represented by the factors listed in §3553(a), in light of the

defendant's changed circumstances.  Specifically, the District Court must consider:

> (a)(1), the nature and circumstances of the offense and the history and characteristics of the defendant; (a)(2)(B)-(D), the need for the sentence imposed to afford adequate deterrence, to protect the public from further crimes of the defendant, and to provide the defendant with programs or treatment; (a)(4), applicable Guidelines sentences; (a)(5), any pertinent sentencing policy statements; (a)(6), the need to avoid unwarranted sentence disparities; and (a)(7), the need to provide restitution.

*Buckler*, 2011 WL 3239526, at *1 n.1.

**B.      *Mr. Chidiebere's Full Asylum Status Is a Changed Circumstance Which Renders the Term of Supervised Release Too Harsh In Relation to the General Goals of Punishment the Sentence Was Intended to Serve***

As long as Mr. Chidiebere remains on supervised release, he will likely be ineligible to

reap the full benefits of his full asylum status.  Although he has been eligible to apply for

permanent legal residence for four months, since May 2012, he has not submitted an application

because the likelihood that his application will be granted while on supervised release is

extremely slim and he cannot afford to expend the time and money necessary to make such an

application if it is highly unlikely to succeed.

Consequently, Mr. Chidiebere's continuation on supervised release is too harsh given that

it leaves him (1)  at constant risk of deportation, because the conditions in Nigeria which underlie

his asylum status are in constant flux; and (2) unable to explore educational and employment

opportunities which legal permanent residence would grant him access to, the lack of which

relegates him to extreme poverty and makes it impossible for him to provide for his family in

Nigeria, and to fulfill his career potential.

1.    ***Mr. Chidiebere's Continuation on Supervised Release Leaves Him At Risk of Losing His Asylum Status, Given the Current Situation in His Home Country of Nigeria And The Unlikelihood Of Achieving Legal Permanent Resident Status While On Supervised Release***

Every day that Mr. Chidiebere remains on supervised release with full asylee status, rather than as a permanent legal resident of the United States, leaves him at risk of deportation back to Nigeria, and near certain persecution by the violent extremist Boku Haram sect if he is returned to his country of origin, especially given the divergence, as explained below, between the official position of the Nigerian Interior Minister that the terrorist group no longer poses a substantial threat – which could terminate Mr. Chidiebere's asylee status – and conflicting reports that the sect maintains a strong hold on the northern region of Nigeria, and thus that Boko Haram, in addition to other Northern Islamic groups in Nigeria, continue to pose a significant threat to people such as Mr. Chidiebere.

Indeed, Boko Haram, the sect that has targeted Mr. Chidiebere, is an organizationally unstable extremist group which has been subdued in the past for only short periods of time by government crackdowns.[2]  For example, after growing increasingly militant and violent, a confrontation with Nigerian security forces in 2009 resulted in the death of Boko Haram's leader, forcing the group underground until late 2010, when Boko Haram re-emerged with new leadership and an even more violent and targeted agenda.[3]

Thus, between 2009 and 2010, an asylee fleeing the Boko Haram would have been at grave risk of deportation to Nigeria, as the revocation of asylum status need only be based on a

---

[2] Farouk Chothia, "Who are Nigeria's Boko Haram Islamists?," *BBC News*, January 11, 2012, available at http://www.bbc.co.uk/news/world-africa-13809501.

[3] *Id*.

9

preponderance of the evidence that the asylee is no longer subject to persecution.  *See* 8 C.F.R. §208.24(b)(1); *see also Mendoza v. U.S. Attorney General*, 327 F.3d 1283, 1287 (11th Cir. 2003).

Therefore, the longer Mr. Chidiebere must remain in limbo as an asylee, the more precarious his situation becomes, especially given the current military crackdown on the Boko Haram in Nigeria, along with very recent claims by the Nigerian Interior Minister that the terrorist group "is no longer a substantial threat."[4]  Despite optimistic official positions, three states in northern Nigeria remain in a state of emergency as a result of the militant group's hold on the region,[5] and 42 students and teachers were killed in July in the fourth attack on a school by Boko Haram since the beginning of June.[6]  Although the official position seems to clearly contradict the state of affairs in Nigeria, a situation similar to what occurred in 2009 before Boko Haram re-emerged might very well arise before Mr. Chidiebere's supervised release has terminated in March of 2014.[7]

---

[4] "Nigeria's Boko Haram is no threat, says Abba Moro," *BBC News*, August 13, 2013, available at http://www.bbc.co.uk/news/world-africa-23689074.

[5] Heather Murdock, "Boko Haram Second-in-Command Killed in Nigeria," *Voice of America News*, August 15, 2013, available at http://www.voanews.com/content/boko-haram-second-in-command-killed-in-nigeria/1730457.html.

[6] "Nigeria school attack claims 42 lives," July 7, 2013, available at http://www.theaustralian.com.au/news/world/nigeria-school-attack-claims-42-lives/story-e6frg6so-1226675417375.

[7] In fact, the Third Circuit very recently affirmed denial of an asylum petition by a Christian Nigerian twice injured in attacks by Boko Haram, once during a prayer meeting and once because his shop was in the vicinity of a church, for failure to establish that "his fear of persecution is country-wide," finding that the government had established by a preponderance of the evidence that "relocation [in Nigeria] was both possible and reasonable."  *See Ehikhuemhen v. Attorney General*, _____ Fed.Appx. _____, 2013 WL 4492764 (3d Cir. 2013).

10

Most importantly, however, analysts maintain that the animosity toward Christianity and Western culture is not an ideology limited to Boko Haram (which translates to "Western education is forbidden"[8]), but stems from a longstanding clash between the Northern Islamic and Southern Christian ideologies in Nigeria,[9] which has spawned similar but unrelated groups all over the northern region of Nigeria.[10]  Regardless whether the Nigerian government is able to subdue Boko Haram permanently, Mr. Chidiebere's work as a Christian minister, and certainly his English fluency and time in the United States, would render his deportation to Nigeria an extremely dangerous prospect, even absent the specific threat which forms the basis of his asylum status.[11]

Nor should Mr. Chidiebere be made to face this frightening prospect due to his asylee status, given that asylum status is not meant to be permanent, as demonstrated by the fact that asylees are eligible to apply for permanent legal residence after one year of residence in the

---

[8] Haruna Umar, "Nigeria: 50 Islamic Insurgents Killed in Army Raid," *ABC News*, September 6, 2013, available at http://abcnews.go.com/International/wireStory/15-killed-suspected-sect-members-nigeria-20171697.

[9] "Nigeria profile," last updated on July 9, 2013, available at http://www.bbc.co.uk/news/world-africa-13951696.

[10] Meg Handley, "The Violence in Nigeria: What's Behind the Conflict?," *Time*, March 10, 2010, available at http://www.time.com/time/world/article/0,8599,1971010,00.html; *see also* "Who are Nigeria's Boko Haram Islamists?," available at http://www.bbc.co.uk/news/world-africa-13809501.

[11] Indeed, Mr. Chidiebere has informed counsel that it will never be safe for him to return to Nigeria, in light of the fact that radical Muslims who are familiar with his missionary work have issued a *fatwa* authorizing Mr. Chidiebere's murder should he ever return. For this reason too, it is of utmost importance that he is able to obtain permanent legal status in the United States, and any impediments to his ability to do so should be removed as soon as possible.

11

United States.  *See* 8 U.S.C. §1159(b)(2).  Rather, asylees are granted limited legal status in the United States, dependent on whether the circumstances in an asylee's home country continue to justify "refugee" status.[12]  *See* 8 C.F.R. §§208.13(b) and 208.24(b)(1).

In Mr. Chidiebere's case, his continued supervised release prevents him from securing his safety by making it highly unlikely that he will be able to achieve permanent resident status in the U.S. until after his term of supervised release is over next year.  Accordingly, in the interests of justice, as well as Mr. Chidiebere's continued safety and stability, his application for early termination of supervised release should be granted.

> **2.** *Mr. Chidiebere Is Further Hampered In His Educational and Employment Opportunities by Unlikelihood That an Application for Legal Permanent Residence While On Supervised Release Will be Successful*

In addition to exposing Mr. Chidiebere to the risk of deportation and persecution in his home country of Nigeria, Mr. Chidiebere's continuation on supervised release also excludes him from educational, and thus employment, opportunities he would otherwise be able to seek out in light of his full asylum status, and his corresponding ability (because he has been on full asylum status for more than a year) to apply for legal permanent resident status.

If Mr. Chidiebere were able to achieve legal permanent residence, it would qualify him to apply for financial aid, which would in turn provide him with the means to pursue an American degree and training in engineering (which, in his experience thus far, is necessary if he wishes to pursue employment in this field in the United States).  Indeed, as set forth **ante**, while Mr.

---

[12] "The term 'refugee' means...any person who is outside any country of such person's nationality ...who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion."  *See* 8 U.S.C. §1101(a)(42).

Chidiebere holds the equivalent of an American bachelor's degree in Petroleum Engineering from the University of Port Harcourt in Nigeria, his employment prospects have been severely limited by the fact that his degree was obtained outside the United States.

Therefore, Mr. Chidiebere's continuation on supervised release, and the extreme difficulty he would face in achieving legal permanent resident status as a result, preclude him from resuming work in his field of his expertise.  Likewise, as set forth **ante**, because he is considered unqualified for jobs in the field of his training and expertise, he has been relegated to doing general unskilled labor, and as such, has been unable to earn more than $300 per week – a salary which is insufficient to cover even his basic expenses, makes it impossible for Mr. Chidiebere to assist his retired parents and eight siblings still living in Nigeria, and poses an economic bar to his ability to support a family here in the U.S.  *See* Chidiebere Letter (Exhibit 6).

Thus, essentially, the unlikelihood that Mr. Chidiebere will ever be able to achieve permanent legal residence while on supervised release, despite his ability to apply for permanent legal residence as a result of the grant of full asylum status, and his resultant inability to seek out educational and career opportunities that would enable him to fulfill his career potential and to become an optimally productive member of society, is substantial enough to warrant early termination of supervised release.  *See e.g. Harris*, 689 F. Supp.2d at 694-95.

**C.**	***In Light of Mr. Chidiebere's Full Asylum Status, the Goals of Punishment Articulated In 18 USC §3553(a) Are No Longer Served By the Term of Supervised Release***

Whether early termination of supervised release is warranted depends on consideration of the factors enumerated in §3553(a),[13]  alongside the impact of supervised release on Mr.

_____

[13]  The factors enumerated in §3553(a) are:

Chidiebere now that he has been granted asylum status which has rendered him eligible to apply for permanent residence.

Underlying consideration of the factors in this case is Mr. Chidiebere's reason for attempting an illegal entry into the United States, which is inextricably intertwined with his asylum status. His desperation to escape the growing violence of Boko Haram in Nigeria in early

---

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  need for the sentence imposed –

(A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)   to afford adequate deterrence to criminal conduct;

(C)  to protect the public from further crimes of the defendant; and

(D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   the kinds of sentences available;

(4)  the kinds of sentence and the sentencing range established for –

(A)  the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines [. . .];

(5)   any pertinent policy statement [. . .];

(6)  the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct;  and

(7)  the need to provide restitution to any victims of the offense.

14

2011 drove him to commit the offense for which he was sentenced to supervised release. *See* Chidiebere Letter (Exhibit 6). His persecution in Nigeria also formed the basis of his asylum petition, the granting of which severs any reasonable connection between the goals of punishment and the term of Mr. Chidiebere's supervised release.

1.      ***"The Nature and Circumstances of the Offense and the History and Characteristics" of Mr. Chidiebere Favor Termination of Supervised Release***

Mr. Chidiebere is an ideal candidate for early termination of supervised release, both with respect to his personal characteristics and the circumstances of the offense. *See* 18 U.S.C. §3553(a)(1). He is an intelligent and family oriented man without any prior criminal history. *See* PSR at ¶ 18-19. His primary goal in the United States is to become a productive and educated member of society, a goal he continues to strive to achieve despite being restricted to employment well below his qualifications.

With respect to the circumstances of the offense, Mr. Chidiebere was impelled to attempt an illegal entry into the United States by an environment of violent hostility toward those who, like himself, worked as Christian missionaries in Nigeria. Even though his peril was eventually recognized as compelling enough to warrant asylum status, Mr. Chidiebere accepted responsibility for committing a crime, and spent over six months in federal custody as a result. The granting of asylum makes it apparent that Mr. Chidiebere is a responsible, hard working and law abiding individual who was driven to criminal activity by extenuating circumstances. Therefore, the fact that he has been granted asylum in the United States emphasizes that his personal characteristics and the circumstances of the offense strongly favor early termination.

> **2.      *Mr. Chidiebere's Asylum Status Renders the Term of Supervised Release Unnecessary to "Afford Adequate Deterrence, to Protect the Public From Further Crimes of the Defendant, and to provide the Defendant with Programs or Treatment"***

The second consideration under §3553(a) is deterrence, both general and specific, and rehabilitation of the individual on supervised release.  *See* 18 U.S.C. §3553(a)(2)(B)-(D).  As an initial matter, Mr. Chidiebere was sentenced to time served, amounting to about two weeks in federal prison, and well within his recommended guidelines range of zero to six months.  Then, he was immediately transferred ICE custody, where he spent over five months awaiting the determination of his petition to remain in the United States.  This alone serves to deter both the general population and Mr. Chidiebere, as it is a substantial sentence in light of the characteristics of the offender and the circumstances of the offense.  *See e.g. United States v. Perez*, _____ F. Supp.2d _____, 2012 WL 2366247, at *2 (E.D.N.Y., June 19, 2012).

In addition, however, the sentence imposed in this case sends "a clear message" that involvement in visa fraud, no matter how extenuating the circumstances motivating the offender, will result in serious consequences.  *Id*.  Accordingly, although Mr. Chidiebere falls into the very narrow category of individuals whose crimes have extremely compelling mitigating circumstances, he still spent six months in federal custody and has served over two years of his three year term of supervised release.  Therefore, the goal of deterring similar criminal activity among similarly situated individuals has undoubtedly been accomplished.

With respect to specific deterrence, or the risk to the public that Mr. Chidiebere will commit further crimes, this situation is unique in that Mr. Chidiebere's incentive to commit further crime has been eliminated by his asylum status.  *See e.g. United States v. Arboleda*, _____

F. Supp.2d ____, 2009 WL 1181049, at *2 (E.D.N.Y., May 1, 2009).  His crime was committed as a result of the danger of his missionary work in Nigeria, and legal status in the United States removes this motivation entirely.  In light of his otherwise spotless criminal history, Mr. Chidiebere's full asylum status removes any risk of recidivism.

Finally, the Court must consider the rehabilitative benefit to the defendant of remaining on supervised release for the full term.  Often, supervised release conditions require an individual to participate in programs or treatment designed to assist and support him during the post-release transition.  Conversely, the only condition attached to Mr. Chidiebere's supervised release term was the reporting requirement, which has since been reduced to a monthly mailing requirement.  *See* McMillan Letter (Exhibit 7).  In addition, supervised release has actually impeded his ability to successfully transition back into society, by foreclosing the possibility of applying for permanent residence, despite his eligibility to do so as an asylee.

Accordingly, Mr. Chidiebere's new supervision status, in combination with the fact that supervised release prevents him from taking advantage of the educational and employment opportunities normally available to an asylee in his position, compels the conclusion that vindicating the goal of rehabilitation actually requires termination of Mr. Chidiebere's supervised release.

### 3.    *The Remaining Factors Under §3553(a)*

The remaining factors listed in §3553(a) are the applicable sentencing guidelines, relevant sentencing policy statements, avoidance of unwarranted sentence disparities, and restitution.  *See* 18 U.S.C. §3553 (a)(4)-(7).

With respect to the relevant sentencing guidelines, Mr. Chidiebere spent one month in federal prison, and an additional six months in ICE custody, fully within his recommended range of zero to six months.

There is no risk of an unwarranted sentencing disparity, as Mr. Chidiebere will have served over two years of his supervised release even with early termination, and in any event, the extenuating circumstances of this case would very likely render any sentencing disparity warranted.

Finally, there are no relevant sentencing policy statements, and there was no restitution ordered.

Consequently, when the factors listed in §3553(a) are considered in the context of Mr. Chidiebere's asylum status, and everything that entails, it is apparent that supervised release is no longer serving the goals of punishment.  Therefore, early termination of supervised release is warranted by Mr. Chidiebere's changed circumstances, and in the interest of justice, pursuant to 18 USC §3583(e)(1).

**CONCLUSION**

Accordingly, for the reasons set forth above, it is respectfully submitted that Mr.

Chidiebere's motion for early termination of supervised release should be granted, and his three

year term of supervised release should be immediately terminated by the Court.

Dated:  18 October 2013
         New York, New York

                                        Respectfully Submitted,


                                         /s/ Lindsay A. Lewis
                                        Lindsay A. Lewis, Esq.
                                        Joshua L. Dratel,  P.C.
                                        29 Broadway, Suite 1412
                                        New York, New York, 10007
                                        (212) 732-0707
                                        jdratel@joshuadratel.com

                                        *Attorneys for the Defendant*
                                        *Onwuchekwa Chidiebere*